Next case on the docket is People v. Cross, 5-24-0557. Helen, if you are ready, you may proceed and please identify yourself for the record. Good morning, Your Honors. Good morning, Counsel. May it please the Court, my name is Sarah Freeh of the Office of the State Appellate Defender, Counsel for Defendant Appellant Latron Cross. The dispositive issue at Latron's trial was who shot and killed Ollie Williams. Latron proceeded to trial on the theory that he was not the shooter for two reasons. First, he was at his grandmother's house at the time of the shooting. And second, his cousin, Albert Gardner, was the person who shot Ollie Williams. However, because of trial counsel's errors, the jury did not hear from two additional alibi witnesses who could have confirmed that Latron was at his grandmother's house, nor did the jury hear about two separate confessions that Gardner made to the murderer. To support these claims in his first stage petition, Latron submitted and attached ample documentary evidence. The only issue this Court needs to resolve is whether Latron made an arguable claim of ineffective assistance of counsel. We respectfully request that this Court reverse the denial of his first stage petition and remand for second stage proceedings. Additional alibi witnesses were critical in this case because the State's evidence against Latron was not strong. No eyewitnesses saw the shooter, Latron did not confess, his DNA wasn't found at the scene, a weapon wasn't recovered, and no gunshot residue was found on his clothing. The State's case hinged exclusively on Ollie Williams' dying declaration that Latron shot him and that Latron was the only person in the car. Given the weak evidence, testimony confirming Latron's alibi, as well as corroborating a third party as a suspect, had the potential to change the outcome of this trial. And in this trial, Latron was acquitted of personally discharging a weapon. Your Honors, I'd first like to highlight the first alibi witness, Zakiya Flake, before moving into the confessions and ending with the final alibi witness. It was undisputed in this case that Zakiya Flake was never interviewed or investigated by trial counsel. This was confirmed in the petition by attachments. There was a letter from trial counsel confirming that he never interviewed or investigated Flake. There is an affidavit from Flake herself detailing what her testimony would have been, as well as the fact that trial counsel never contacted her. And there is an affidavit from Latron, who is the defendant appellant in this case, explaining that he told trial counsel that he was with Flake at the time of the shooting. These attachments were consistent with the record because Latron's sole alibi witness, Naomi Cross, testified that Flake was at her home on the day of the shooting with Latron. Illinois courts have consistently held that counsel's refusal to investigate potential alibi witnesses amounts to a substantial showing of ineffective assistance of counsel. Similar to the defendant in People v. Upshaw, through his own affidavit and through the affidavit of the alibi witness, Latron demonstrated that he and Flake were together at the time of the shooting. But importantly, Your Honors, Upshaw was a second stage proceeding and currently at the first stage proceeding where Latron is, there's a much lower standard of merely showing that he has an arguable claim of ineffective assistance of counsel. Taking the facts in these affidavits as true, Latron has met this standard. And included in the facts of these affidavits was Gardner's confession to Flake. Counsel's errors prevented the jury from hearing evidence about two confessions that Albert Gardner himself made. The first was to Flake that I just referenced, and the second was to Latron himself. To reiterate the gravity of the fact that counsel never investigated or interviewed Flake, not only was she an alibi witness, but her affidavit also included information about how Gardner told her that he shot and killed Ollie Williams and that he feared for his life that somebody might shoot him in retaliation. As to the second confession to Latron, at trial, counsel did not attempt to overcome the state's hearsay objections when Latron attempted to testify that Gardner himself told him that he shot Ollie Williams and told Latron where he could find the car that he borrowed. Even though counsel did not attempt to overcome these hearsay objections, these statements that Latron was attempting to testify to could have been admitted as statements against interest. The state acknowledges that there is an arguable legal claim that Gardner's statement was against interest. On page 28 of the state's brief, it highlights that Gardner's statements were made to people close to him, made in close time to the offense, were spontaneous, and were incriminating. Furthermore, the statements that Latron was attempting to testify to that Gardner told him were corroborated and counsel could have and should have used corroborating circumstances to verify the veracity of these statements. Latina Jones, who is Latron's former partner and girlfriend, testified at trial that Albert Gardner told her where she could find the car that he borrowed. Gardner also confessed in a rap music video that ultimately was not admitted into evidence, but counsel could have used this video as a corroborating circumstance. And lastly, because counsel did not investigate Zakiah Flake, he couldn't have used information that she had in her affidavit that Gardner told her he shot and killed Ollie Williams. There were three separate instances where had counsel performed reasonably, he could have used to overcome the state's hearsay objections and allowed Latron to testify about Gardner's confessions. Here we had a credible alternative suspect with the same exact motive to kill Ollie Williams as Latron, but the jury was prevented from hearing this evidence. Your Honors, the jury also needed to hear from alibi witness Jermaine Williams. While counsel had Jermaine investigated, he failed to call him as an alibi witness at trial. And I'd first like to briefly address the state's claims that this claim was forfeited, and this claim was not forfeited, first because it could not have been brought on direct appeal because there is no evidence in the appellate record about what Jermaine would have testified to. On page 20 of its brief, the state conceded that the affidavits that Latron attached to his petition amounted to more evidence than what was available in the appellate record with regards to this claim. And this additional evidence was an affidavit from Jermaine about what he would have testified to at trial. And this not only included the fact that he was at Naomi Cross' house with Latron, but that Gardner asked to borrow Latina's car. Because this specific claim relies on information outside of the appellate record, it was not forfeited. And secondary, contrary to the state's argument, this claim was not and could not have been fully litigated at the Krankel proceeding below. Because Krankel proceedings aren't the arena where merits of these claims are litigated. Without an affidavit as to the substance of Jermaine's testimony, and without the assistance of counsel, Latron could not have fully litigated a Strickland claim. Illinois courts have held that trial counsel's failure to call a witness who would contradict the state's evidence as well as corroborate and support the defense's theory constitutes deficient performance. Despite the dearth of evidence against Latron in this case, counsel only called one alibi witness, failed to investigate another, and failed to call a third. Jermaine's testimony would have directly corroborated the sole alibi witness's testimony that Latron was at her house at the time of the shooting. Your Honors, the lack of evidence in this case amplified the prejudicial effect of counsel's errors, and these errors arguably constituted the ineffective assistance of counsel. This is sufficient to remand this case for second stage proceedings. Your Honors, I see that my time is expiring if I may briefly conclude. For the foregoing reasons, we respectfully request that this Court reverse the denial of Latron's petition and remand for second stage proceedings. Any questions?  No questions. With regard to the rap video, are you saying that that is a stand-alone statement against penal interest and that alone is a confession, or are you saying it corroborates other statements that he made? Your Honor, I'm saying that it corroborates other circumstances, or it is a corroborating circumstance, because that video, the Court did a full chambers analysis on that video and deemed that it could not be, in and of itself, a stand-alone confession. The Fourth District also found that rap video to be too vague, and it wasn't just the trial court that found it innumerous, but the Fourth District also... That's correct, Your Honor. ...confirmed that finding. Yes. So you're, if I rephrase it, you're saying it corroborates other statements that he made that would constitute confessions? Yes, Your Honor. In addition to the rap video where Gardner is making claims about somebody who died, there is that piece of evidence, plus the fact that Zakiah Flake said that Gardner confessed to her, as well as the fact that Latina Jones testified at trial that Gardner told her where he could find the car. And so this is one of the three circumstances. Didn't the jury make a specific finding, though, that the defendant did not personally just charge the firearm, so he was found guilty as an accomplice rather than a principal, correct? So the jury was not instructed on accountability in this case, and the State's whole case hinged on this dying declaration, which had two parts. The first part was that Lutron shot Ollie Williams, and the second part of the dying declaration was that Lutron was the only person in the park. All right, I think we should be getting time for rebuttal. Excuse me. Appellee, please step forward here and may identify yourself for the record, and you may proceed when you're ready. Good morning, closing counsel. Your Honor, may it please the Court. My name is Michael Lennox, and I represent the State in this matter. This Court should affirm the summary dismissal of the defendant's post-conviction petition at the first stage, where the defendant's claim that his trial counsel was ineffective for, one, not calling Jermaine Williams guilty, and, two, that his trial counsel Two, not investigating Zakiya Flake as a witness. Three, allegedly not informing the defendant of all plea offers. And, four, not arguing against the trial's purported improper prevention of the defendant to testify about Albert Gardner's alleged confession were bothered by forfeiture and or were meritless. Going into some rules, Your Honors, there are three stages to a post-conviction petition, and in the first, the Court determines whether the petition is frivolous or patently without merit, and the finding that it is frivolous or patently without merit with that finding, the Court must dismiss the petition. Another way to word this is stating the gist of the constitutional claim, and the petition must have an arguable basis in law or fact. Examples of meritless claims are claims completely contradicted by the record or claims barred by res judicata or forfeiture. Generally, issues that have been presented in a prior proceeding, but that could have been presented in a prior proceeding but were not, are forfeited when raised for the first time in a post-conviction petition, and the bars of res judicata and forfeiture cannot be avoided by simply rephrasing issues the defendant already raised, nor can it be avoided by amending or adding an allegation that is encompassed by a previously adjudicated issue. To succeed on a claim of ineffective assistance of counsel, the defendant must show his counsel's performance was deficient and the deficient performance prejudiced him. Effective assistance of counsel means competent, not perfect representation, and at the first stage of the act, a petition alleging ineffective assistance will be summarily dismissed unless it is arguable that counsel's performance fell below an objective standard of reasonableness and the defendant was arguably prejudiced. To establish deficient performance, the defendant must overcome the strong presumption counsel's actions or inaction was sound trial strategy. Decisions involving which witnesses to call and whether to present an alibi defense are matters of trial strategy, generally reserved for the discretion of trial counsel, and were circumstances known to counsel at the time do not reveal a sound basis for further inquiry into a particular area. It is not ineffective for the attorney to forego additional investigation. To prevail on a claim of ineffective assistance of counsel for a failure to convey an offer, the defendant must demonstrate that, one, a reasonable probability existed that the defendant would have accepted the guilty plea offer absent counsel's deficient performance, and two, the guilty plea offer would have been entered without the prosecution rescinding the offer or the court refusing to accept the party's agreement. Generally, an unsworn out-of-court declaration that the declarant committed the crime and not the defendant on trial is inadmissible, even though the declaration is against the declarant's penal interest. This rule attempts to prevent everyone accused of a crime to simply pin their crime on a deceased third party, like in this case. Only where hearsay testimony bears persuasive assurances of truth, trustworthiness, and is critical to the accused's defense may such testimony be admissible under the Statement Against Penal Interest Exception to the Hearsay Rule. And the rule provides that, quote, a statement tending to expose the declarant to criminal liability offered in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. Some objective indicia of trustworthiness to determine the reliability of the statement were outlined by the United States Supreme Court in chambers. One, the statements were made spontaneously to a close acquaintance of the declarant shortly after the offense. Two, the statements were corroborated by some other evidence. Three, the statements were undisputably self-incriminating and against the declarant's interest. And four, there was adequate opportunity for cross-examination of the declarant. Courts must consider whether the out-of-court statements were made under circumstances providing, quote, considerable assurances of its reliability by objective indicia of trustworthiness. And finally, a counsel will not be deemed ineffective for failing to make futile objections or failing to file a futile motion, nor is counsel required to engage in futile trial tactics. In addressing the argument, Your Honors, first, I think most importantly, this Court should determine that the defendant's ineffective assistance of counsel argument has been forfeited. The defendant was aware of Zakiya Flake, Jermaine Williams, and Albert Gardner prior to trial and what significance they may have in his case, yet only raised concerns about Jermaine in his criminal inquiry. Issues regarding those three individuals were apparent either in the record or from the defendant and could have been raised on direct appeal, yet were not. Unless the defendant can also make a showing that this forfeiture stems from ineffective assistance of appellate counsel, the forfeiture should not be relaxed. Beyond forfeiture, Your Honors, is the fact that the issues brought under ineffective assistance are meritless because they fail to establish an arguable basis that trial counsel's performance was deficient and or prejudicial. Regarding Jermaine Williams, not only did the trial court already hear argument regarding him not testifying, but the decision not to call him was intentional, came after an investigation by the defense, and falls squarely within a matter of trial strategy. He did not specifically indicate he was with the defendant at the time of the shooting. Prior to trial, he provided no information to the defense beyond that which Naomi Cross, the defendant's grandmother, would testify to. And he might have been related to the defendant as he referred to the grandmother as Granny. He stated he was listening to music and playing games for most of the day with a person named, or he called Tunchi, yet neither he nor the defendant indicated that Tunchi was the defendant's nickname. His 2020 affidavit also provides no new information to the counsel's prior investigation. Therefore, the argument that he should have been called is meritless because there is no arguable deficiency, nor is there arguable prejudice. Regarding Zakiya Flake, and I'm seeing I'm running out of time, so I'll quickly address Zakiya Flake. Her testimony would not have added any significant value to the evidence in this case, such that the defendant's argument would have merit. The defendant did not mention she was with him as an alibi witness at trial, nor did he do so in his counsel post-trial motion, pro se post-trial motion, or direct appeal. She was his cousin. She does not state that she was present with him at their grandmother's house the entire time. She says at one point at least that she was giving a bath to her daughter while he was there, and the site of the shooting was notably a walking distance from the grandmother's house. And notably, Jermaine, Zakiya, and Naomi, all or at least the last two being family of the defendant, have a reason to lie for the defendant. His sister was killed by the victim. And anyone can understand a yearning for retribution in this circumstance. It makes sense why a family would stand in the way of law feeling that Kamarabi's justice had been served. But the victim had, by law, paid his debt to society, and now the defendant must do the same. Can you comment briefly on the allegation the defendant made? I believe, kind of like Justice Lewis said earlier, we have so many cases that kind of run together. But my memory is the defendant alleged that his attorney did not convey plea offers to him, but the trial judge found there was no evidence of any other plea offers, or the defendant did not put into the record any evidence of other offers were made. Is that accurate? Can you comment on that? Yes, Justice Vaughn. So in that instance, my understanding, and I apologize I'm not the original drafter of the brief, but my understanding is that when asked if he had been conveyed the plea agreements or whatever, I'm sorry, he conveyed that he had been conveyed that last plea agreement and did not object, did not challenge the attorney's statement that there have been many plea agreements that have gone back and forth. All right. Thank you. Any further questions? No. Thank you, counsel. Thank you, Your Honors. Thank you, Your Honors. I'd like to start with the legal standard at this stage. At the first stage, Latron merely needs to show that it is arguable that counsel is deficient and arguable that counsel's errors prejudice Latron. Here, when we talk about arguable deficiency, we're talking about claims that, one, are not positively rebutted by the record, and two, are not indisputably meritless, and those things cannot be said of Latron's claims. At this first stage, questions of strategy are better fleshed out at the second stage. Illinois courts hold consistently that questions of trial strategy, as well as witness credibility, are not appropriate first stage considerations. Here, we merely need to show that Latron made an arguable claim, and in his petition, he attached extensive documentary evidence that was not in the appellate record. Your Honors, I'd like to first start with the claim that the ineffective assistance of counsel claim had been forfeited because counsel knew of the alibi witness, Zakiah Flake. Here, there was nothing in the record outside of Naomi Cross' testimony stating that Flake was at her house that indicates that counsel knew of Flake, and counsel certainly did not know of the substance of Flake's testimony, which she included in her affidavit. There was nothing about what she would have testified to. She confirmed that trial counsel never contacted her, and ultimately, counsel's failure to investigate her, he could not have made a strategic decision about whether or not to call her if there was no investigatory basis on which he could have made that determination. So here, it wasn't enough that counsel potentially maybe knew that Flake was a witness. There was nothing indicating what the substance of her testimony would be. Importantly, counsel proceeded to trial with essentially a two-pronged strategy. One, that Latron had an alibi defense, and two, that Albert Gardner was the actual shooter. And here, he didn't properly support either one of these claims, and that includes not investigating alibi witness Zakiah Flake. It's true that sound trial strategy is immune from claims of ineffective assistance of counsel, but at this point, we simply cannot say that it was sound trial strategy to not investigate Flake and to not call Jermaine Williams when we take the facts in their affidavits as true. They amply support Latron's claim of the ineffective assistance of counsel when the primary defense was an alibi defense and counsel only called one alibi witness. Here, with regards to Jermaine Williams and the fact that this might have been strategy to not call him to the stand, it isn't just that Jermaine's potential testimony placed him at the house with Latron. It had additional information about the fact that Albert Gardner asked to borrow the car. This is in Jermaine's affidavit, and this is not in the appellate record. And I'd like to also briefly address my colleague's contention that there was a person named Tunchi who Jermaine was playing games with and that he never alleged who Tunchi was. But on the state's own direct examination of a detective who was familiar with young people in the area, the detective confirmed that Tunchi was, in fact, a nickname for Latron Cross. So that information is in Jermaine's affidavit. And your audience here, ultimately, the bottom line question is, did Latron make an arguable claim of the ineffective assistance of counsel? Questions of strategy are better fleshed out during second-stage proceedings, and the consideration at the first stage is merely whether or not this was arguable. Here we cannot say that Latron's claims were positively rebutted by the record because Naomi Cross testified that he was at her house. She testified as an alibi witness, nor are these claims indisputably meritless because Illinois case law holds that the failure to call or investigate an alibi witness can and does constitute the ineffective assistance of counsel. And your Honors, for the foregoing reasons and all of the reasons mentioned before, we respectfully request that you reverse the denial of Latron's first-stage petition and remand for second-stage proceedings. Any further questions? I'm going to follow up unless you're going to follow up on your question regarding the plea offers because I believe in my notes that before the trial began, as most trial judges do, ask has there been offers made, and they had that discussion. Counsel did state there were several offers made. They were back and forth. The final offer, I believe in my notes, 25 years at 100%, and I think the trial court asked the defendant about that, and the defendant agreed that that had been conveyed, but he was rejecting the offer. Is my recollection of that fact, is that correct? Your Honor, yes, in this case, the final offer that was conveyed was 25 years at 100%. Latron is contesting this part of the transcript where counsel says multiple offers have gone back and forth and they have all been conveyed to Mr. Cross. Latron alleges that these additional offers were never made to him, and the only one that he was made aware of was in a legal visit that he had with counsel prior to trial. In his affidavit, he states that he had a conversation about the plea offers, but his allegation is that he never received these other offers from counsel. I guess my question would be, I mean, minimum with a gun would be 35 years at a sentencing hearing, and he was offered 25, so I doubt the prior ones were better than 25. In this case, Latron is alleging that because he doesn't have the substance of those offers, he is not able to say whether or not he would have or wouldn't have accepted, and is alleging that he wouldn't just have accepted any other offer, but had he known the substance of the other offers, might have made a different decision. Okay, thank you. Thank you. No questions then. All right, thank you, counsel, for your argument.  We will take this matter under advisement and issue a ruling in due course. We have